**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                                               Case No.  07-32016

WEBB MTN, LLC

                    Debtor


**MEMORANDUM ON MOTION FOR ENTRY OF ORDER
DETERMINING THAT DEBTOR IS SUBJECT TO THE "SINGLE
ASSET REAL ESTATE" PROVISIONS OF 11 U.S.C. § 362(d)(3)
AND MOTION TO DISMISS CHAPTER 11 CASE**


**APPEARANCES:**    GENTRY, TIPTON & McLEMORE, P.C.
                            Maurice K. Guinn, Esq.
                            Post Office Box 1990
                            Knoxville, Tennessee  37901
                            Attorneys for Debtor

                            HODGES, DOUGHTY & CARSON
                            Thomas H. Dickenson, Esq.
                            Post Office Box 869
                            Knoxville, Tennessee  37901-0869
                            Attorneys for Kenneth Whaley, Greenbrier Developers, LLC,
                              M & A Enterprises, Inc., Executive Realty Partnership, L.P., and
                            Gerald Franklin, Trustee

                            RICHARD F. CLIPPARD, ESQ.
                            UNITED STATES TRUSTEE
                            Patricia C. Foster, Esq.
                            800 Market Street
                            Suite 114
                            Knoxville, Tennessee  37902
                            Attorneys for United States Trustee


**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

Before the court are the following: (1) Motion For Entry of Order Determining That Debtor is Subject to the "Single Asset Real Estate" Provisions of 11 U.S.C. § 362(d)(3) (Motion for Determination) filed by Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., Executive Realty Partnership, L.P., and Gerald Franklin, Trustee, (collectively, Movants) on August 1, 2007, seeking a determination that the Debtor's bankruptcy constitutes a "single asset real estate" case as defined by the Bankruptcy Code; and (2) Motion to Dismiss Chapter 11 Case (Motion to Dismiss) filed by the Movants on August 10, 2007, asking the court to dismiss the Debtor's case for cause, including a lack of good faith. The Debtor filed an Objection to the Motion for Determination on August 21, 2007, and a Response in opposition to the Motion to Dismiss on August 30, 2007.

The Motion for Determination and Motion to Dismiss were consolidated for trial and an evidentiary hearing was held on September 11, 2007. The record before the court consists of certain undisputed facts and eleven (11) exhibits stipulated into evidence through written Stipulations of Facts and Documents filed by the parties on September 4, 2007, twelve (12) additional exhibits introduced into evidence during the trial, and the testimony of Billy P. Evans, Gerald Franklin, Kenneth Whaley, and Jack Collier.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (O) (2005).

**I**

On October 5, 2005, Jack Collier, the Debtor's sole member, entered into a First Agreement for Purchase and Sale (Contract) with the Movants for the purchase of approximately 1,865.60 acres

2

of real property known as Webb Mountain, State Route 416, Pittmann Center Road, Sevierville, Sevier County, Tennessee (Webb Mountain Property), for a purchase price of $27,975,000.00, representing $21,000,000.00 for the first 1,400 acres and $15,000.00 per additional full acre. COLL. TRIAL EX. A.[1] Collier assigned the Contract to the Debtor and, as evidenced by five General Warranty Deeds recorded with the Register of Deeds for Sevier County, Tennessee, the Debtor purchased the Webb Mountain Property from the Movants on March 24, 2006. *See* COLL. TRIAL EX. B.

The Debtor financed $26,225,000.00 of the purchase price as evidenced by its execution of the following promissory notes (collectively, Notes) and Deeds of Trust: (1) Promissory Note to Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., and Gerald Franklin, Trustee, in the principal amount of $4,790,000.00, secured by a Deed of Trust on 71.21 acres; (2) Promissory Note to Executive Realty Partnership, L.P., in the principal amount of $990,000.00, secured by a Deed of Trust on 21 acres; (3) Promissory Note to Greenbrier Developers, LLC, in the principal amount of $10,465,000.00, secured by a Deed of Trust on 195.39 acres; (4) Promissory Note to Gerald Franklin, Trustee, in the principal amount of $8,980,000.00, secured by a Deed of Trust on approximately 1,440 acres; and (5) Promissory Note to M & A Enterprises, Inc., in the principal amount of $1,000,000.00, secured by a Deed of Trust on 131.56 acres. *See* TRIAL EX. C through TRIAL EX. G. Each Note called for a partial payment of principal and interest within ninety (90) days, with the unpaid principal balance and accrued interest due on January 3, 2007.

---

[1] Although not material to the issues before the court, the Contract was amended by the following: (1) Amendment to First Agreement for Purchase and Sale dated December 23, 2005; (2) Second Amendment to First Agreement for Purchase and Sale dated January 25, 2006; and (3) Third Amendment to First Agreement for Purchase and Sale dated March 10, 2006. The court will refer to these documents collectively as "Contract."

As required under the terms of the Notes, the Debtor made the following partial payments, totaling $3,250,000.00, on June 23, 2006:  (1)  $200,000.00 on the Note to Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., and Gerald Franklin, Trustee; (2) $50,000.00 on the Note to Executive Realty Partnership, L.P.; (3)  $1,000,000.00 on the Note to Greenbrier Developers, LLC; (4)  $1,000,000.00 on the Note to Gerald Franklin, Trustee; (5)  $1,000,000.00 on the Note to M & A Enterprises, Inc.  The Debtor paid the Note to M & A Enterprises, Inc., in full on December 8, 2006, and the Deed of Trust encumbering the 131.56 acre tract was released.

The four remaining Notes were not paid as required on January 3, 2007, and the Movants subsequently commenced foreclosure proceedings against the remainder of the Webb Mountain Property.  In addition, on March 9, 2007, two Notices of Lien Claim were recorded against the Webb Mountain Property for services performed for but not paid by the Debtor.  The first was recorded by Whaley & Sons, Inc., a company owned by Kenneth Whaley, to secure a $421,015.50 claim against the Debtor.  TRIAL EX. U.  The second was recorded by Southern Design Group, Inc., a company owned by Billy P. Evans and Kenneth Whaley, to secure a $450,103.62 claim against the Debtor. TRIAL EX. S.

In an effort to work out the default and prevent the Webb Mountain Property from being foreclosed, the parties entered into a Conditional Extension of Borrowers' [sic] Obligation Under Promissory Notes (Conditional Extension Agreement) on March 27, 2007, under the terms of which the Debtor made an interest payment on March 28, 2007, in the amount of $421,279.63 on the Note to Gerald Franklin, Trustee, which represented the largest of the Notes in default.  *See* TRIAL EX. I.

4

Under the terms of the Conditional Extension Agreement, the foreclosure sales were adjourned to a date after June 25, 2007, upon execution by the Debtor of Quit Claim Deeds transferring the Webb Mountain Property back to the Movants to be held in escrow until June 26, 2007, at which time, if the Notes were not fully paid, the Escrow Agent was to "immediately" record the Quit Claim Deeds thereby transferring the Debtor's interest in the four remaining tracts to the Movants. The Debtor executed four Quit Claim Deeds which were delivered to Patrick Harrell, Attorney and Escrow Agent, and are currently being held by him in a safety deposit box at Smart Bank

On March 27, 2007, the Debtor also executed an Agreement (Release Agreement) with Whaley & Sons, Inc., and Southern Design Group, Inc., under the terms of which those two entities agreed to each "immediately" execute and record a Full Release of Lien and Notice of Nonpayment, fully releasing their liens encumbering the Webb Mountain Property. TRIAL EX. N. As consideration, the Debtor acknowledged its indebtedness to Whaley & Sons, Inc., and Southern Design Group, Inc., in the collective amount of $450,000.00, and agreed to pay this amount by July 5, 2007. In the event payment was not made as agreed upon, both Whaley & Sons, Inc., and Southern Design Group retained the right to re-file their liens on or after July 6, 2007.

The Debtor filed the Voluntary Petition commencing this Chapter 11 bankruptcy case on June 25, 2007, and filed its statements and schedules on July 10, 2007. The total indebtedness encumbering the Webb Mountain Property, excluding the 131.65 acre tract, on the date of the Debtor's bankruptcy was $24,728,734.03, which is itemized as follows: (1) $4,986,620.09 on the Note to Kenneth Whaley, Executive Realty, Inc., Greenbrier Developers, LLC, and Gerald Franklin,

5

Trustee; (2) $1,021,334.67 on the Note to Executive Realty, Inc.; (3) $10,465,000.00 on the Note to Greenbrier Partners; and (4) $8,255,779.27 on the Note to Gerald Franklin, Trustee.

## II

Dismissal of a Chapter 11 case is governed by 11 U.S.C. § 1112(b), which provides, in material part, that "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes cause." 11 U.S.C. § 1112(b)(1) (2005). The party seeking dismissal bears the burden of proof by a preponderance of the evidence. *In re 4 C Solutions, Inc.*, 289 B.R. 354, 364 (Bankr. C.D. Ill. 2003).

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), the Bankruptcy Code did not define cause; however, this was remedied by the inclusion of § 1112(b)(4) which lists sixteen non-exclusive events or factors constituting cause for dismissal. Additionally, the Sixth Circuit has consistently held that cause for dismissal includes bad faith. *Trident Assocs. L.P. v. Metro. Life Ins. Co. (In re Trident Assocs. L.P.)*, 52 F.3d 127, 130 (6th Cir. 1995). A determination of whether a debtor has filed in bad faith requires an examination of the totality of the circumstances, focusing upon the following indicators as relevant:

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

6

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization.

*Laguna Assocs. L.P. v. Aetna Cas. & Surety Co. (In re Laguna Assocs. L.P.)*, 30 F.3d 734, 738 (6th Cir. 1994) (citations omitted); *see also Metro. Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988) ("Good faith is an amorphous notion, largely defined by factual inquiry."). Upon examination of the record, the court finds that most of the *Laguna* factors are present, that the Debtor's case was filed in bad faith, and dismissal is warranted.

The first factor, that the Debtor has one asset, weighs in favor of dismissal. Schedule A, filed by the Debtor on July 10, 2007, lists five separate parcels of real property, one of which it owns free and clear, and Schedule B lists a checking account at Associated Bank in Milwaukee, Wisconsin, containing a minimal balance of $1,252.00. *See* COLL. TRIAL EX. H. Nevertheless, the five tracts making up the Webb Mountain Property are contiguous and, as evidenced by boundary surveys of the property as a whole, were contemplated by the Movants and the Debtor to constitute one large parcel of real property for the purposes of the Debtor's development project from the beginning. TRIAL EX. L; TRIAL EX. M.

This is evidenced not only by the testimony of Mr. Whaley and Mr. Franklin, who testified that the plans included construction of buildings and structures over the entire Webb Mountain

Property, many of which would overlap property lines, and that they had, in the past, refused to sell it piecemeal in part due to capital gains taxes and related issues, but also by the Contract itself, which states that "[t]he Seller is the owner of a vacant parcel of land . . . consisting of approximately 1,865.60 acres." COLL. TRIAL EX. A. Similarly, the Concept Plan submitted to and approved by the Sevier County Regional Planning Commission on February 14, 2006, and renewed at the Debtor's request on February 13, 2007, combined the individual tracts of property into one large tract for the purposes of project designs, which included plans for a luxury hotel with convention center and spa, two 18-hole golf courses, a retail commercial center, single-family homes, and condominiums would be built on the property. *See* TRIAL EX. M.[2]

The second factor, improper pre-petition conduct of the Debtor, also weighs in favor of dismissing the case. The Movants do not contend, nor does the court find, that the Debtor, through Mr. Collier, engaged in any fraudulent behavior pre-petition. Nevertheless, the question is not whether the Debtor acted fraudulently but whether it engaged in improper actions. Based upon the record before it, the court finds that the Debtor did act improperly with respect to the Movants, primarily with respect to the negotiated agreements for additional time.

---

[2] Although the court will not address the Motion for Determination since dismissal renders it moot, the record clearly supports the Movants' contention that the Debtor falls squarely within the definition of a "single asset real estate" case for purposes of 11 U.S.C. § 362(d)(3) (2005). There is no question in the court's mind that the Webb Mountain Property is a "single . . . project . . . which generates substantially all of the gross income of [the] debtor . . . and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B) (2005); *see also Kara Homes, Inc. v. Nat'l City Bank (In re Kara Homes, Inc.)*, 363 B.R. 399, 406 (Bankr. D.N.J. 2007) ("single asset real estate" encompassed a real estate project "owned by an entity whose sole purpose was to operate that real estate with monies generated by the real estate.") (citing *In re Philmont Dev. Co.*, 181 B.R. 220, 224 (Bankr. E.D. Pa. 1995)).

8

On March 27, 2007, the Debtor, through Mr. Collier, executed the Conditional Extension Agreement with the Movants and the Release Agreement with Whaley & Sons, Inc., and Southern Design Group, Inc. Under the terms of the Conditional Extension Agreement, the Debtor was given additional time to pay the four outstanding Notes, which were past due from January 3, 2007. In exchange for postponing the foreclosures that were pending, the Debtor was to pay the interest due on the Note to Gerald Franklin, Trustee, in the amount of $421,679.63 and to deposit into escrow four Quit Claim Deeds transferring the remainder of the Webb Mountain Property back to the Movants in the event payment on the outstanding Notes was not made on or before June 25, 2007. Under the terms of the Release Agreement, the Debtor agreed to pay a total of $450,000,00 to Whaley & Sons, Inc., and Southern Design Group, Inc., in satisfaction of substantially larger claims[3] by July 5, 2007, in exchange for the filing of releases of the Notices of Lien Claim recorded against the Webb Mountain Property. In the event of nonpayment, the Notices of Lien Claim could be re-recorded in the full amounts owed. When asked why they agreed to enter into these agreements, both Mr. Franklin and Mr. Whaley stated that they had been assisting Mr. Collier and the Debtor to find investors or purchasers, and they were trying to give him additional time without losing their rights with respect to the debts owed to them.

Although the Debtor did, in fact, pay the $421,679.63 required for the Movants to accept the Conditional Extension Agreement, he did not pay the remaining balances of the Notes, nor did he pay the $450,00.00 to Whaley & Sons, Inc., and Southern Design Group, Inc. Furthermore, rather than allow the Quit Claim Deeds and/or renewed Notices of Lien Claim to be recorded, the Debtor

---

[3] *See infra* n. 4.

9

filed this Chapter 11 case on June 25, 2007. The timing itself is suspect, but more troublesome to the court is the fact that the Debtor induced Whaley & Sons, Inc., and Southern Design Group, Inc., to release their liens on the Webb Mountain Property but then cut off their rights to re-record the Notice of Lien Claim following default under the terms of the Release Agreement. Equally troublesome is the fact that the Debtor cut off the rights of the Movants to record the escrowed Quit Claim Deeds by filing for bankruptcy the day before they were entitled to exercise those rights under the Conditional Extension Agreement. The Movants retained their secured interests in the Webb Mountain Property by virtue of the Deeds of Trust, but once Whaley & Sons, Inc., and Southern Design Group, Inc., released their liens, they lost their secured status. While the impact of the loss of the liens may be problematic as to the four tracts encumbered by the Deeds of Trust, their loss is significant as to the 131.65 acre tract which was not encumbered by any other liens because Whaley & Sons, Inc., and Southern Design Group, Inc., are now precluded from re-recording their liens by the automatic stay. Thus, due to the Debtor's representations and then subsequent action in filing bankruptcy, those entities are left with a minimum unsecured claim of $450,000.00.[4]

The third factor, the Debtor's few unsecured creditors, also weighs in favor of dismissal. In its statements and schedules, the Debtor lists only Mr. Collier as an unsecured creditor, holding a claim in the amount of $6,349,289.00 for loans to the Debtor between October 23, 2005, and

---

[4] In its Schedule D, the Debtor lists Whaley & Sons, Inc., as holding a secured claim in the amount of $450,000.00 as of March 2007; however, at trial, Mr. Whaley testified that Whaley & Sons, Inc., is actually owed $421,015.15 as reflected on the Notice of Lien Claim filed on March 9, 2007, and marked as Trial Exhibit U, and Mr. Evans testified that Southern Design Group, Inc., is actually owed $450,103.62 as reflected on the Notice of Lien Claim filed on March 9, 2007, and marked as Trial Exhibit N. As previously discussed, these claims are now unsecured due to the releases of the Notices of Lien Claim recorded by those entities.

10

June 25, 2007.[5] As discussed, even including Whaley & Sons, Inc., and Southern Design Group, Inc., the fact remains that Mr. Collier, the Debtor's sole member, holds the majority of the very few unsecured claims of the Debtor. Furthermore, the only secured creditors are the Movants, as related to the purchase of the Webb Mountain Property, holding scheduled claims in the aggregate amount of $25,001,788.70. As such, dismissal does not greatly affect any party in interest, namely the Debtor's creditors. Likewise, the fourth and seventh *Laguna* factors also weigh in favor of dismissal. There is no dispute that the Webb Mountain Property had been scheduled for foreclosure, and only through the Movants' postponing them and entering into the Conditional Extension Agreement were the foreclosures not conducted. It is additionally undisputed that the Debtor has no employees and that Mr. Collier is the sole owner/member.

Finally, the eighth factor, concerning the Debtor's possibility of reorganization, weighs heavily in favor of dismissal. At trial, Mr. Collier testified that since March 2006, when he initially purchased the Webb Mountain Property, he has spoken to "hundreds of people" and has spent 85% of his 60-hour work weeks actively, but unsuccessfully, seeking to sell, refinance, and/or entice investors to develop it. He stated that he has spoken to local and national lenders about refinancing and has employed brokers to find loans, that he has explored the joint venture route by seeking out hedge fund investor groups, and that he has tried to sell the Webb Mountain Property with the use of national brokers. He acknowledged that both Mr. Franklin and Mr. Whaley have been cooperative and have assisted him from the beginning in his efforts to market and/or refinance the Webb Mountain Property, and this testimony was substantiated by Mr. Franklin, who testified that he

---

[5] At trial, the Debtor acknowledged that the State of Tennessee has filed a claim and that his former attorneys' office was inadvertently left off the statements and schedules, and that he plans to amend them accordingly.

referred all calls with respect to the property to Mr. Collier and he put Mr. Collier in touch with and introduced him to potential investors, and by Mr. Whaley, who testified that he has met with people and shown the property. Nevertheless, despite his efforts, Mr. Collier also testified that he has had potential prospects that did not pan out, that he does not have any contracts for the sale, refinance, or infusion of investment capital into the Webb Mountain Property, and that the financial markets have recently changed adversely.

On the other hand, Mr. Collier testified that his efforts have not been fruitless, citing the following examples of progress: (1) the Debtor is presently negotiating a letter of commitment from Providence Funding to pay off the Note to Gerald Franklin, Trustee; (2) Mr. Collier has been working with Crown Gate, a $500,000,000.00 fund, concerning either a purchase or a joint venture; (3) there are two groups, one out of Florida and one from Colorado, interested in the Webb Mountain Property; and (4) the Debtor has entered into an Agreement Between Debtor and General Capital Partners, LLC to assist with its efforts to "refinance, seek a joint venture partner, sell as a going concern, or otherwise dispose of" the Webb Mountain Property which is subject to court approval. *See* TRIAL EX. V.

As for actual development on the Webb Mountain Property, Mr. Collier testified that the full routing plans for the golf courses have been completed and grading has been done for roads, but no working drawings have been developed nor has any of the work outlined in the Concept Plan been completed. He also testified that substantial changes were made to the plans for the Phase I residential development, although none of those changes have been implemented. Similarly, Mr. Whaley testified that Whaley & Sons, Inc., performed post-petition work invoiced at $24,710.00 to

correct erosion from heavy rains and people riding on the land in order to satisfy the Tennessee Department of Erosion Control and Water, but that no work towards development has been done on the Webb Mountain Property in the last three or four months. *See* TRIAL EX. O. Additionally with respect to development issues, Mr. Evans testified that it would take at least six months of work to have the sewer system approved and to do what is necessary in order to satisfy the various regulatory agencies so that the final plat can be approved by the Sevier County Regional Planning Commission, which must happen in order to preserve the concept. Mr. Evans also testified that there is now a hostile attitude towards mountain top development in Sevier County and that the regulations for development within Sevier County are going through more stringent revisions. Mr. Collier also acknowledged that the current Concept Plan will expire in February 2008 if development does not commence, and renewal is not approved.

Based upon the difficulties Mr. Collier has experienced over the past eighteen months with respect to marketing the Webb Mountain Property either for sale or investment, in addition to his difficulties in finding a financial institution to refinance, the court agrees that the prospects for reorganization are slim. Mr. Collier testified that he has spent countless hours making contacts, trying to induce investors, and attempting to refinance or sell the property, and he has been assisted in these efforts by Mr. Franklin and Mr. Whaley, who have shown the property and referred potential buyers and/or investors. Yet, despite the hours expended and the effort put forth, there are no contracts in place and development has stalled, irrespective of the fact that there are entities that are now expressing potential interest for investing in the development or refinancing all or a portion of the debt.

Furthermore, during the eighteen months that the Debtor has owned the Webb Mountain Property, there has been minimal progress with development. The Concept Plan originally approved on February 14, 2006, has been renewed once. Whether it can be renewed a second time is problematic. Mr. Evans' testimony that it would take at least six months to perform the steps required to submit the final plat to the Sevier County Regional Planning Commission necessary to preserve the plan, which at this point already falls beyond the February 13, 2008 expiration date for the current Concept Plan, is undisputed.[6]

Based upon the foregoing, the court finds that the majority of the *Laguna* factors are present and that the Debtor did not file its bankruptcy case in good faith. Dismissal for cause is therefore appropriate under § 1112(b).

An order consistent with this Memorandum will be entered.

FILED: September 17, 2007

> BY THE COURT
>
> /s/ RICHARD STAIR, JR.
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE

---

[6] The court acknowledges that the fifth and sixth factors, concerning a standstill in state court litigation and attempts to evade court orders are not present. These factors, however, have little, if any, application because they appear to relate to a judicial foreclosure which is not utilized in the State of Tennessee.