**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                                    Case No. 07-32016

WEBB MTN, LLC

                Debtor

**MEMORANDUM ON MOTION TO DETERMINE
THAT DEBTOR IS SUBJECT TO THE "SINGLE ASSET
REAL ESTATE" PROVISIONS OF 11 U.S.C. § 362(d)(3)**

**APPEARANCES:**    GENTRY, TIPTON & McLEMORE, P.C.
                               Maurice K. Guinn, Esq.
                               Post Office Box 1990
                               Knoxville, Tennessee 37901
                               Attorneys for Debtor

                            HODGES, DOUGHTY & CARSON
                               Thomas H. Dickenson, Esq.
                               Post Office Box 869
                               Knoxville, Tennessee 37901-0869
                               Attorneys for Kenneth Whaley, Greenbrier Developers, LLC,
                                M & A Enterprises, Inc., Executive Realty Partnership, L.P., and
                                Gerald Franklin, Trustee

                            RICHARD F. CLIPPARD, ESQ.
                            UNITED STATES TRUSTEE
                               Patricia C. Foster, Esq.
                               800 Market Street
                               Suite 114
                               Knoxville, Tennessee 37902
                               Attorneys for United States Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court upon the Motion for Entry of Order Determining That Debtor is Subject to the "Single Asset Real Estate" Provisions of 11 U.S.C. § 362(d)(3) (Motion for Determination) filed by Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., Executive Realty Partnership, L.P., and Gerald Franklin, Trustee (collectively, Movants) on August 1, 2007, seeking a determination that the assets of the Debtor constitute "single asset real estate," as defined by the Bankruptcy Code. The Debtor's Objection to the Motion for Determination was filed on August 21, 2007.

An evidentiary hearing was held on September 11, 2007, on the Motion for Determination and on the Motion to Dismiss Chapter 11 Case filed on August 10, 2007, by the Movants. On September 17, 2007, the court entered an Order accompanied by a Memorandum on Motion for Entry of Order Determining that Debtor is Subject to the "Single Asset Real Estate" Provisions of 11 U.S.C. § 362(d)(3) and Motion to Dismiss Chapter 11 Case (Memorandum Opinion) granting the Movants' Motion to Dismiss, thereby rendering the Motion for Determination moot. The Debtor timely appealed to the United States District Court which, pursuant to an Order entered on February 8, 2008, reversed the dismissal Order and remanded the case for further proceedings. Those further proceedings consist of ruling on the pending Motion for Determination.

The record before the court consists of Stipulations of Facts and Documents filed by the parties on September 4, 2007, including ten (10) stipulated exhibits, labeled A through K, and twelve (12) additional exhibits, labeled L through W, introduced into evidence at trial, along with the testimony of Billy P. Evans, Gerald Franklin, Kenneth Whaley, and Jack Collier. The court cannot

and does not consider or rely upon any documents filed in connection with the post-trial review and/or appeal of the September 17, 2007 dismissal Order.

Because the facts giving rise to this bankruptcy case and the resolution of the issues presently before the court are as set forth in the September 17, 2007 Memorandum Opinion, they will be restated here.

I

On October 5, 2005, Jack Collier, the Debtor's sole member, entered into a First Agreement for Purchase and Sale with the Movants for the purchase of approximately 1,865.60 acres of real property known as Webb Mountain, State Route 416, Pittmann Center Road, Sevierville, Sevier County, Tennessee (Contract), for a purchase price of $27,975,000.00, representing $21,000,000.00 for the first 1,400 acres and $15,000.00 per additional full acre. COLL. TRIAL EX. A.[1] Collier assigned the Contract to the Debtor, and as evidenced by five General Warranty Deeds recorded with the Register of Deeds for Sevier County, Tennessee, the Debtor purchased the real property from the Movants on March 24, 2006. *See* COLL. TRIAL EX. B.

The Debtor financed $26,225,000.00 of the purchase price as evidenced by the execution of the following promissory notes (collectively, Notes) and Deeds of Trust: (1) Promissory Note to Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., and Gerald Franklin,

---

[1] Although not material to the issues before the court, the Contract was amended by the following: (1) Amendment to First Agreement for Purchase and Sale dated December 23, 2005; (2) Second Amendment to First Agreement for Purchase and Sale dated January 25, 2006; and (3) Third Amendment to First Agreement for Purchase and Sale dated March 10, 2006. The court will refer to these documents collectively as "Contract."

Trustee, in the principal amount of $4,790,000.00, secured by a Deed of Trust on 71.21 acres; (2) Promissory Note to Executive Realty Partnership, L.P., in the principal amount of $990,000.00, secured by a Deed of Trust on 21 acres; (3) Promissory Note to Greenbrier Developers, LLC, in the principal amount of $10,465,000.00, secured by a Deed of Trust on 195.39 acres; (4) Promissory Note to Gerald Franklin, Trustee in the principal amount of $8,980,000.00, secured by a Deed of Trust on approximately 1,440 acres; and (5) Promissory Note to M & A Enterprises, Inc., in the principal amount of $1,000,000.00, secured by a Deed of Trust on 131.56 acres.  *See* TRIAL EX. C through TRIAL EX. G.  Each Note called for a partial payment of principal and interest within ninety (90) days, with the unpaid principal balance and accrued interest due on January 3, 2007.

As required under the terms of the Notes, the Debtor made the following partial payments, totaling $3,250,000.00, on June 23, 2006:  (1) $200,000.00 on the Note to Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., and Gerald Franklin, Trustee; (2) $50,000.00 on the Note to Executive Realty Partnership, L.P.; (3) $1,000,000.00 on the Note to Greenbrier Developers, LLC; (4) $1,000,000.00 on the Note to Gerald Franklin, Trustee; (5) $1,000,000.00 on the Note to M & A Enterprises, Inc.  The Debtor paid the Note to M & A Enterprises, Inc., in full on December 8, 2006, and the Deed of Trust encumbering the 131.56 acre tract was released.

The four remaining Notes were not paid as required on January 3, 2007, and the Movants subsequently commenced foreclosure proceedings against the remainder of the Webb Mountain Property.  In addition, on March 9, 2007, two Notices of Lien Claim were recorded against the property for services performed for but not paid by the Debtor.  The first was recorded by Whaley & Sons, Inc., a company owned by Kenneth Whaley, to secured a $421,015.50 claim against the

Debtor. TRIAL EX. U. The second was recorded by Southern Design Group, Inc., a company owned by Billy P. Evans and Kenneth Whaley, to secure a $450,103.62 claim against the Debtor. TRIAL EX. S.

In an effort to work out the default and prevent the Webb Mountain Property from being foreclosed, the parties entered into a Conditional Extension of Borrowers' [sic] Obligation Under Promissory Notes (Conditional Extension Agreement) on March 27, 2007, under the terms of which the Debtor made an interest payment on March 28, 2007, in the amount of $421,679.63 on the Note to Gerald Franklin, Trustee, which represented the largest portion of the Notes in default. *See* TRIAL EX. I. Under the terms of the Conditional Extension Agreement, the foreclosure sales were adjourned to a date after June 25, 2007, upon execution by the Debtor of Quit Claim Deeds transferring the Webb Mountain Property back to the Movants to be held in escrow until June 26, 2007, at which time, if the Notes were not fully paid, the Escrow Agent was to "immediately" record the Quit Claim Deeds thereby transferring the Debtor's interest in the four remaining tracts to the Movants. The Debtor executed four Quit Claim Deeds which were delivered to Patrick Harrell, Attorney and Escrow Agent, to be held by him in a safety deposit box at Smart Bank.

On March 27, 2007, the Debtor also executed an Agreement (Release Agreement) with Whaley & Sons, Inc., and Southern Design Group, Inc., under the terms of which those two entities agreed to each "immediately" execute and record a Full Release of Lien and Notice of Nonpayment, fully releasing their liens encumbering the Webb Mountain Property. TRIAL EX. N. As consideration, the Debtor acknowledged its indebtedness to Whaley & Sons, Inc., and Southern Design Group, Inc., in the collective amount of $450,000.00, and agreed to pay this amount by

5

July 5, 2007. In the event payment was not made as agreed upon, both Whaley & Sons, Inc., and Southern Design Group retained the right to re-file their liens on or after July 6, 2007.

The Debtor filed the Voluntary Petition commencing this Chapter 11 bankruptcy case on June 25, 2007, and filed its statements and schedules on July 10, 2007. The total indebtedness encumbering the Webb Mountain Property, excluding the 131.65 acre tract, on the date of the Debtor's bankruptcy was $24,728,734.03, which is itemized as follows: (1) $4,986,620.09 on the Note to Kenneth Whaley, Executive Realty, Inc., Greenbrier Developers, LLC, and Gerald Franklin, Trustee; (2) $1,021,334.67 on the Note to Executive Realty, Inc.; (3) $10,465,000.00 on the Note to Greenbrier Developers; and (4) $8,255,779.27 on the Note to Gerald Franklin, Trustee.

## II

The Movants request a determination that the Debtor is subject to the provisions of 11 U.S.C. § 362(d)(3) which provides that:

> (d)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> . . . .
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

>     (B) the debtor has commenced monthly payments that—
>
> > (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> > (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate[.]

11 U.S.C. § 362(d)(3) (2005). To fall within the scope of § 362(d)(3), a debtor's assets must constitute single asset real estate as that term is defined by the Bankruptcy Code:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

11 U.S.C. § 101(51B) (2005).[2]

This statutory definition requires three criteria be met in order to be deemed "single asset real estate": (1) the real property in question constitutes a single property or project other than residential real property with fewer than four residential units; (2) the real property in question generates substantially all of the debtor's gross income; and (3) the debtor is not a family farmer and is not engaged in any substantial business other than operation of the real property in question and

---

[2] Although § 362(d)(3) and § 101(51B) were amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, prior case law concerning single asset real estate is still applicable. *See Ad Hoc Group of Timber Noteholders v. Pac. Lumber Co. (In re Scotia Pac. Co., LLC)*, 508 F.3d 214, 224 (5th Cir. 2007); *In re Club Golf Partners*, 2007 Bankr. LEXIS 1225, at *12-13, 2007 WL 1176010, at *5 (Bankr. E.D. Tex. Feb. 15, 2007).

activities incidental thereto. *Ad Hoc Group of Timber Noteholders v. Pac. Lumber Co. (In re Scotia Pac. Co., LLC)*, 508 F.3d 214, 220 (5th Cir. 2007).

The Debtor contends that the five separate parcels of real property were acquired from different parties at different times and, although it plans to construct one resort on the Webb Mountain Property, because of the several distinct projects planned thereon, the statutory definition cannot apply. At trial, Mr. Collier testified that the Debtor has plans to construct two golf courses for resort guests, one private and one semi-private, and that it plans to build a luxury hotel, a convention center, and a spa, in addition to a retail commercial center, a development of single-family homes, and condominiums. Based upon the differing uses and goals for these projects, the Debtor argues that they cannot be lumped within the "single project" label, and because there are multiple uses planned for the property, its gross income would not be generated from one source, nor would the income produced be passive, as the business conducted by the Debtor following development would be varied and substantial. Conversely, the Movants contend that the Debtor's sole purpose in purchasing the Webb Mountain Property was to develop it as a golf resort and spa, constituting one comprehensive project that falls entirely within the scope of the statutory definition. Additionally, the Movants point out that although the Debtor's intent is to develop the property into varied income-producing ventures, it is presently largely undeveloped land producing no income.

Pursuant to the wording § 101(51B), the definition includes not only single "properties," but also encompasses single "projects," so the fact that a debtor may hold title to more than one "property" does not exclude it from being single asset real estate. *See, e.g., In re Pensignorkay*, 204 B.R. 676, 681-82 (Bankr. E.D. Penn. 1997) (holding that "a tract of undeveloped land consisting of

8

two adjacent parcels of real property that the Debtor acquired with the intention of creating subdivided parcels suitable for building and development constitutes a 'single property or project' within the meaning of the statute.") (internal citations omitted).

If the definition only included single properties, there would be no further review. Here, there are five separate parcels of real property, one of which, the 131-acre tract, the Debtor owns free and clear. *See* COLL. TRIAL EX. H. Nevertheless, the five tracts are contiguous and, as evidenced by boundary surveys of the property as a whole, were at all times contemplated by the Movants and the Debtor as comprising one large parcel of real property to be developed by the Debtor as one large resort project. This is evidenced by the Contract itself, which states that "[t]he Seller is the owner of a vacant parcel of land . . . consisting of approximately 1,865.60 acres," COLL. TRIAL EX. A, as well as the Settlement Statement which describes the property being sold/bought as "1865.60 acre tract located in Sevier County, Tennessee" for the "Purchase Price" of $27,975,000.00. TRIAL EX. P.

Similarly, both Mr. Whaley and Mr. Franklin testified that the original development plans included construction of buildings and structures over the entire Webb Mountain Property, many of which would overlap property lines between the various tracts, a fact which was confirmed by the Concept Plan submitted to and approved by the Sevier County Regional Planning Commission on February 14, 2006, and by the Final Plat of Phase I, which was not submitted for approval. *See* TRIAL EX. M; TRIAL EX. R. As evidenced by the Concept Plan, designated the "Webb Mountain Subdivision," the individual tracts were forged into a single parcel of land for the purposes of project designs, including the plans for a luxury hotel with convention center and spa, two 18-hole golf

9

courses, a retail commercial center, single-family homes, and condominiums that Mr. Collier testified were to be built on the property. *See* TRIAL EX. M.[3] Phase I of the development consisted of thirty residential lots, covering portions of three of the five tracts: the Franklin Trust tract, the Greenbrier tract, and the M & A Enterprises tract. *See* TRIAL EX. R. The unified nature of the tracts with respect to the Concept Plan is further evidenced by the Minutes of the Commission's Regular Monthly Meeting, which state as follows:

> CONCEPT PLAT REVIEW - WEBB MOUNTAIN:
> Webb Mountain is located on Pittman Center as well as Locust Ridge Roads. This property has 1865 Acres with 56 lots in Phase I, ten public roads in phase I and twenty-two total roads. The property will be served with public water and sand flirtation [sic] system. The proposed locations of lots within Phase I are platted and the [sic] range in size from one acre to three acres. Some lots do exceed 30% and must meet the minimum lot size requirement on the final. Phase I will consist of a common area tract to be used for a condominium development. Homeowners will also be required before final. As with any mountainous development there are drainage issues. The developers have been in contact with TDEC and need to work closely with Mr. Clabo throughout construction. There is an existing bridge, which accesses the property that was constructed years ago and should be certified by an engineer that it conforms to applicable standards. Because of the magnitude of this development I think it would be appropriate for the planning commission to review the design plans, and would request they be added to the agenda as submitted.
>
> ACTION TAKEN:
> Mr. Allen made the motion to approve the plat. Mr. Gibson seconded the motion, which passed.

TRIAL EX. R.

It is undisputed that the whole of the Webb Mountain Property is comprised of five (5) separate tracts of real property. It is also undisputed that the Debtor paid the Note to M & A

---

[3] The Concept Plan displays a single parcel comprised of the five tracts with no internal lot lines drawn to identify the boundaries of the individual tracts and contains a written note stating "This Development Contains Approximately 1,865 Acres." TRIAL EX. M.

Enterprises, Inc., in full on December 8, 2006, thereby obtaining a release of the Deed of Trust encumbering the 131-acre tract. Nevertheless, based upon the record before the court, it is clear that the tracts comprise a single project, and even though the Debtor has plans to develop a number of different businesses on the Webb Mountain Property, the plans are still part and parcel of one large land development. *See, e.g., In re Club Golf Partners*, 2007 Bankr. LEXIS 1225, at *13-14, 2007 WL 1176010, at *5 (Bankr. E.D. Tex. Feb. 15, 2007) (stating that a "single project" within the definition "recognizes that real estate development is often done in separate projects that may each comprise several tracts or parcels of land that may not be contiguous.").

Moreover, no development has actually commenced upon the Webb Mountain Property, therefore it is not producing any income and is passive in nature; i.e., the Debtor is "not . . . conducting any active business, other than merely operating the real property and activities incidental thereto . . . [such as] the mere receipt of rent and truly incidental activities such as arranging for maintenance or perhaps some marketing activity, or . . . mowing the grass and waiting for the market to turn." *Pac. Lumber Co.*, 508 F.3d at 221 (quoting *Club Golf Partners*, 2007 Bankr. LEXIS 1225, at *14-15, 2007 WL 1176010, at *5 (internal quotations omitted)).

Section 362(d)(3) provides that the Movants will be granted relief from the automatic stay unless, within thirty days of the determination that this Chapter 11 is a "single asset real estate" case, the Debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or has commenced monthly payments to the Movants equal to the interest at the nondefault contract rate. That determination has now been made.

11

An order determining the Debtor's assets to be single asset real estate will be entered.

FILED:  March 6, 2008

                                            BY THE COURT

                                            */s/  RICHARD STAIR, JR.*

                                            RICHARD STAIR, JR.
                                            UNITED STATES BANKRUPTCY JUDGE